UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:<br><br>STEVEN PAUL BUTNER,<br><br>   Debtor. | Case No. 16-08959-JMC-7 |
| ARTHUR ELSTON and MARY ELSTON,<br><br>   Plaintiffs,<br><br>   v.<br><br>STEVEN PAUL BUTNER,<br><br>   Defendant. | Adv. Pro. No. 17-50184 |

**<u>DEFENDANT'S TRIAL BRIEF</u>**

Defendant, Steven Paul Butner, by counsel, pursuant to the Court's May 7, 2018 Order Continuing Trial and Resetting Cut-Off Dates, hereby submits the following trial brief.

**I. INTRODUCTION**

This is an adversary proceeding to determine the nondischargeability of an alleged debt. The plaintiffs in this action are Arthur and Mary Elston (the "Elstons"). In 2015, Mr. Elston contracted with Energy Secure Solutions, Inc., an Indiana corporation ("ESS"), to build an addition to their home. At that time, Mr. Butner was an employee and part owner of ESS. Pursuant to their agreement with ESS, the Elstons wrote a check for $15,000 as a down payment. ESS deposited that check in its account. Though ESS commenced work on the project, it ultimately failed to complete it. The Elstons now seek to hold Mr. Butner personally responsible for ESS's failure to perform.

## II.  CLAIMS FOR RELIEF

While the complaint contains only one general heading titled "Causes of Action," two separate claims for relief can be divined.  First, the Elstons allege that they paid the $15,000 down payment to ESS due to "false pretenses, false representations and actual fraud" under section 523(a)(2) of the Bankruptcy Code.[1]  Specifically, they assert that Mr. Butner represented he would complete the home improvements detailed in their contract with ESS, thereby inducing the down payment.  The complaint cites to no other misrepresentations.  Second, the Elstons allege that Mr. Butner converted the down payment without their knowledge and consent for his personal use, and that such conversion constitutes a willful and malicious injury under section 523(a)(6).  These allegations are false, and the evidence at trial will show, among other things, that (1) Mr. Butner made no such representation, (2) when he met with the Elstons on behalf of ESS, Mr. Butner intended for ESS to perform the work; (3) ESS actually did begin to perform on the contract for the Elstons; (4) Mr. Butner never converted the Elstons' deposit check; and (5) Mr. Butner never intended any sort of willful or malicious injury to the Elstons.

## I.  LEGAL STANDARDS

### a.  Standard for nondischargeability under section 523(a)(2)(A)[2]

Section 523(a)(2)(A) provides that a "discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false

---

[1] Unless specified otherwise, all chapter and section references are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and all rule references are to the Federal Rules of Bankruptcy Procedure.

[2] While the complaint generally refers to section 523(a)(2), it makes no reference to a written statement concerning Mr. Butner's financial condition as required by section 523(a)(2)(B).  Thus, the only discernable cause of action on the facts alleged must relate to section 523(a)(2)(A).  Moreover, the Elston contracted with ESS, not Steve Butner.

representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). The creditor bears the burden of proof on all elements of nondischargeability. *Grogan v. Garner*, 498 U.S. 279, 288–90 (1991).

To prevail on a claim of "false representation," the Elstons must prove all of the following elements by a preponderance of the evidence: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010).

A "false representation" is an express misrepresentation that can be shown by the debtor's written statement, spoken statement, or conduct. *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010). "An intentional falsehood relied on under § 523(a)(2)(A) must concern a material fact." *Scarpello*, 272 B.R. at 700.

Justifiable reliance is an intermediate level of reliance that is less stringent than "reasonable reliance" but more stringent than "reliance in fact." *See Field v. Mans*, 516 U.S. 59, 72–73 (1995). Justifiable reliance is not measured from the objective person standard, but rather from the experiences and characteristics of the particular creditor. *Id.*

Actual fraud is broader than misrepresentation in that neither a debtor's misrepresentation nor a creditor's reliance is necessary to prove nondischargeability for "actual fraud." *Scarpello*, 272 B.R. at 700 (citing *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000)); *see also Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016). Actual fraud is defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another" which includes "all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *McClellan*, 217 F.3d at 893. In such cases, a

3

creditor must prove "(1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute." *Hanson*, 432 B.R. at 772.

To establish a claim for false pretenses, false representation, or actual fraud under section 523(a)(2)(A), a creditor must prove the debtor acted with an intent to deceive, which is measured by a debtor's subjective intention at the time of the alleged fraud. *Scarpello*, 272 B.R. at 700.

### b. Standard for nondischargeability under section 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Again, the creditor bears the burden of proof on all elements of nondischargeability. *Grogan v. Garner*, 498 U.S. at 288–90. In evaluating section 523(a)(6) claims, bankruptcy courts in the Seventh Circuit have focused on three points: "(1) an injury caused by the debtor (2) willfully and (3) maliciously." *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013) (citations omitted).

Injury "is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *Id.* "The injury need not have been suffered directly by the creditor asserting the claim." *Id.* "The creditor's claim must, however, derive from the other's injury." *Id.*

"Willfulness requires a deliberate or intentional injury, not merely a deliberate or intentional *act* that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)) (emphasis in original) (internal quotations omitted). "Willfulness can be found either if the debtor's motive was to inflict the injury, or the debtor's act was substantially certain to result in injury." *Horsfall*, 738 F.3d at 774 (internal quotations omitted).

Maliciousness requires the debtor to act "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); *Horsfall*, 738 F.3d at 74–75.

## II. ARGUMENT

### a. Mr. Butner did not defraud the Elstons.

To support the Elstons' claim under section 523(a)(2), the complaint relies solely upon the allegation that Mr. Butner misrepresented "to the Elstons that he would complete the home improvements detailed in [the] contract thereby inducing the Elstons to make a down payment for the improvement." Complaint at ¶ 14. This is not accurate. The facts at trial will show that the Elstons entered into a contract with ESS, not Steve Butner personally, to perform work on their home. They will also show that Mr. Butner made no representations that he alone, or in his personal capacity, would complete the work on their home. As a corporate entity, ESS used employees, agents, and subcontractors to complete the various projects for which it was engaged. While Mr. Butner was an employee and part owner of ESS, he did not personally guaranty ESS's obligations to the Elstons and did not represent that he would personally complete the requested work.

The facts will also show that Mr. Butner lacked the requisite intent for a finding of nondischargeability under section 523(a)(2)(A). At all relevant times, Mr. Butner believed that ESS would perform the work required by its contract with the Elstons and that the project would be completed as planned.

And finally, the facts will show that the Elstons did not and could not justifiably rely upon the misrepresentation they allege. It is plainly apparent from the scope of the work listed that one man could not possibly complete the project by himself. The Elstons knew that ESS

5

would use its employees and subcontractors to complete work. For that reason, the Elstons entered into a contract with ESS, not Mr. Butner. And the Elstons paid ESS, not Mr. Butner. Given these facts, the only conclusion can be that the Elstons did not rely on Mr. Butner to complete the work.

### b. Mr. Butner did not willfully or maliciously harm the Elstons.

The Elstons allege in their complaint that Mr. Butner converted their $15,000 down payment check. Specifically, the complaint states that "Upon information and belief, Butner has ignored and failed to follow the corporate form of ESS, and/or controlled or manipulated the corporate form of ESS to perpetrate fraud on the unsuspecting Elstons *in that Butner retained their down payment and converted said amount to his own personal use.*" Complaint at ¶ 11 (emphasis added). This is also wrong.

Under Indiana law, a "person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion . . . ." Ind. Code § 35-43-4-3(a). It is important to note, however, that conversion alone is not sufficient to establish nondischargeability – a plaintiff must still satisfy the willful and malicious requirements of section 523(a)(6). *Garoutte v. Damax, Inc.*, 400 B.R. 208, 213 (S.D. Ind. 2009).

For purposes of this case, the distinction does not matter because Mr. Butner neither committed conversion nor willfully and maliciously harmed the Elstons. The facts at trial will show that the Elstons gave Mr. Butner a check for $15,000 made out to ESS. Mr. Butner delivered that check to the relevant person at ESS, who deposited those funds into ESS's bank account. ESS's records show that the check as having been deposited into ESS's bank account. Thus, Mr. Butner did exactly what he was supposed to do with the check.

Further, ESS never improperly distributed the proceeds of the check to Mr. Butner. The $15,000 check was a contractual down payment under Mr. Elston's agreement with ESS – it was not held by ESS in trust or given for any purpose other than to satisfy the Elstons' contractual obligations. Pursuant to those same contractual obligations, ESS was within its rights to deposit the funds into its account. Mr. Butner was a W-2 employee and the only funds he received from ESS were in the form of regular wages or expense reimbursements. Mr. Butner never directed ESS to distribute the $15,000 proceeds from the check directly to him, nor could he – Mr. Butner was not responsible for the management of ESS's finances. In short, no conversion occurred.

Finally, Mr. Butner in no way deliberately injured or acted in conscious disregard of any duty to the Elstons. The Elstons made a down payment to ESS for the work they contracted to have done on their house. ESS was unable to complete that work, thus breaching its agreement with the Elstons. The Elstons at most can assert a breach of contract claim against ESS, which they did in state court without naming Mr. Butner as a defendant or asserting that he was in any way liable or involved. While unfortunate, Mr. Butner did not intend for this to happen and did not cause this to happen. Ultimately, a breach of contract claim against a third party cannot satisfy the elements of section 523(a)(6).

### III.  CONCLUSION

The Elstons are dissatisfied customers of a now defunct corporate entity. The facts at trial will show that Mr. Butner, while an employee and part owner of that entity, did not defraud or willfully and maliciously harm the Elstons. Because of this, the Court should enter judgment against the Elstons and in favor of Mr. Butner on all claims for relief in the complaint.

Respectfully submitted,

ICE MILLER LLP

/s/ John C. Cannizzaro
Thomas E. Mixdorf
John C. Cannizzaro
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
(317) 236-2100
Fax: (317) 236-2219
thomas.mixdorf@icemiller.com
john.cannizzaro@icemiller.com

*Counsel for Defendant Steven Paul Butner*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

    U.S. Trustee                                    ustpregion10.in.ecf@usdoj.gov
    Penny L. Carey                              carey.law@hotmail.com

I further certify that on September 12, 2018, a copy of the foregoing was mailed by first-class U.S. Mail, postage prepaid and properly addressed, to the following:

    N/A

                                                  /s/ John C. Cannizzaro